ESTELLE COHN, Plaintiff-Appellant, v. THE NORTHERN TRUST COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—91—3643

Opinion filed July 29, 1993.

Dan Karlin, Ltd., and Fischel & Kahn, Ltd., both of Chicago (Dan Karlin & Angela M. Kalamaras, of counsel), for appellant.

Johnson & Bell, Ltd., of Chicago (Scott W. Hoyne and Greg D. Conforti, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

On December 14, 1983, the plaintiff, Estelle Cohn, was injured as she was exiting the premises of the defendant, the Northern Trust Company, through a revolving door. The plaintiff filed the instant action and charged, in her third-amended complaint, that the defendant was negligent in maintaining its revolving door and that her injuries were aggravated when the defendant's employees moved her after her initial fall. The matter was tried before a jury, but, at the close of the plaintiff's case, the trial court directed a verdict in favor of the defendant. The plaintiff has appealed, and, for the reasons which follow, we affirm.

Before we address the underlying issues presented by this case, we feel compelled to address the proper standard to be applied in ruling on motions for directed verdicts in cases tried before a jury.

In their briefs on appeal, both parties refer to the manifest weight of the evidence standard in discussing the propriety of the actions of the trial court in granting the defendant's motion for a directed verdict. Both parties cite to the decision in *Thomas v. University of Chicago Lying-In Hospital* (1991), 221 Ill. App. 3d 919, 583 N.E.2d 73, in support of their manifest weight arguments. In cases tried without a jury, the trial judge as the trier of fact applies a manifest weight standard to a motion for a directed finding at the close of a plaintiff's

case. (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399.) However, this case was tried before a jury and, as such, the manifest weight standard has nothing whatever to do with the trial court's ruling on the defendant's motion for a directed verdict.

■ Directed verdicts in jury cases are governed by the *Pedrick* standard: that is, directed verdicts ought be granted only in cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) To the extent that *Thomas* implies that a manifest weight test is to be applied in judging the propriety of a directed verdict in a jury case, we decline to follow it. (See *City of Evanston*, 64 Ill. 2d at 57-58.) Having articulated the standard, we will now address the propriety of the trial court's order applying the *Pedrick* rule.

In her third-amended complaint, the plaintiff charged that the defendant was negligent in: (1) maintaining the revolving door so as to permit the door to move in a fast and unusual manner; (2) moving the plaintiff after she fell; (3) allowing the plaintiff to rise to her feet after she fell; and (4) lifting the plaintiff out of a chair and placing her in a wheelchair after her fall. The plaintiff alleged that her first charge proximately caused her injury and the remaining three charges aggravated the injury.

Four witnesses testified as to the condition and maintenance of the door itself: the plaintiff; Earl Cornelius, one of the defendant's security guards; Gustav Prengen, employed in the defendant's maintenance department; and Salvatore Maggoire, the building manager.

The plaintiff testified that on December 14, 1983, she was exiting the defendant's bank through a revolving door. As she was about to exit the revolving door, someone entered another compartment of the door; the door whirled, hitting her in the back and throwing her to the floor. She described the movement of the door as "fast." She also testified that she had used the revolving doors many times before and they moved slowly.

Cornelius testified that he was working as a security guard on the date of the plaintiff's fall. After being notified by another guard that a woman had fallen in the vestibule of the bank, he went to the location where the plaintiff was lying on the floor just outside of the revolving door. When he reentered the bank, he walked through the revolving door and it seemed to be operating properly, but he never checked the timing of the door. Cornelius testified that he made a re-

port of the incident, but because he did not detect any malfunction in the revolving door, he did not direct a copy of the report to the maintenance department.

Prengen testified that on the date of the plaintiff's injury, he was employed by the defendant as a maintenance carpenter. He testified that no one from the maintenance department asked him to inspect the door after the plaintiff's fall and he did not do so. Prengen stated that the revolving door in issue was supposed to move at the rate of one revolution every five seconds and the doors were inspected quarterly. It was his responsibility to check the door speed at the quarterly inspections. When he checked the door in February 1984, the quarterly inspection after the plaintiff's fall, it did not need adjustment.

Maggoire, the defendant's building manager at the time of the plaintiff's fall, testified that no one in the maintenance department was notified of the plaintiff's fall and no inspection of the door was performed until the regular quarterly inspection in February 1984.

■ To prevail on her theory that the defendant's negligent maintenance of its revolving door proximately caused her injuries, the plaintiff was required to come forward with some evidence tending to prove that a specified condition under the defendant's control caused her to fall. (See *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328.) In this case, the condition was alleged to be the speed at which the revolving door rotated. The only testimony in the record relating to the proper speed of rotation was that of Prengen, who testified that the door was supposed to rotate once every five seconds. The plaintiff was unable to estimate the speed of the door at the time of her fall. She could only describe it as fast compared to its slow rotation when she used it on prior occasions. The plaintiff did not testify that the door moved faster than normal when she pushed it; it was her testimony that it moved fast after another person entered the door.

■ The plaintiff's subjective verbal characterization that the rotation was fast, without more, is so lacking in precision of meaning that it fails to give the jury any evidence from which it could conclude that at the time of the plaintiff's fall the door was out of adjustment. (See *Lucker v. Arlington Park Race Track Corp.* (1986), 142 Ill. App. 3d 872, 492 N.E.2d 536.) Liability cannot be predicated upon guess, speculation, or conjecture as to the cause of an injury. Proximate cause can only be established upon probative evidence tending to establish that the defendant's acts caused the injury complained of, and, if a plaintiff fails to come forward with such evidence, a *prima facie* case has not been made and a directed verdict is proper. (*Vance v. Lucky*

*Stores, Inc.* (1985), 134 Ill. App. 3d 166, 480 N.E.2d 167.) Under the facts of this case, it is no more probable that the plaintiff's injury was caused by a maladjustment of the defendant's door than by the rotation of the door by the person who entered it as the plaintiff was exiting. To suggest otherwise would be to engage in pure speculation. Liability cannot be established where the cause of an injury rests upon conjecture or surmise. *Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 468 N.E.2d 422.

■ The plaintiff's three other theories of liability all relate to an aggravation of her initial injury by reason of the manner in which the defendant's employees handled her after she fell. The plaintiff testified that after her fall, she tried to get up but was unable. The next thing she remembered was being put in a wheelchair. She did not remember being moved from the spot where she fell prior to being placed in the wheelchair. The only medical testimony in this case came from Dr. Nasim Rana, the plaintiff's treating physician, whose evidence deposition was read to the jury. After testifying that forcing the plaintiff to walk after her fall could aggravate her injury, Dr. Rana conceded that he could not say with a reasonable degree of medical certainty what aggravation, if any, occurred after the plaintiff fell. No witness testified that the defendant's employees in fact caused the plaintiff to place weight upon her injured leg and the plaintiff was unable to remember any such event. In sum, there is no evidence in this record to support the notion that the plaintiff's injuries were aggravated after her initial fall, much less aggravated by the defendant's employees.

Lastly, the plaintiff argues that a directed verdict was inappropriate in light of the defendant's failure to produce the original incident report written by Cornelius pursuant to the plaintiff's Supreme Court Rule 237 notice to produce. (134 Ill. 2d R. 237.) The plaintiff contends that the original report would have revealed whether the defendant's maintenance department had been notified of the plaintiff's accident, whether the subject door was inspected, and whether the door was found to be defective.

The record reflects that the plaintiff made two pretrial requests for the subject report. The first came on July 6, 1988, as part of a notice for the taking of Maggoire's discovery deposition; and the second, on January 12, 1989, as part of the notice for the taking of the deposition of Lillian Jacobs, another of the defendant's employees. In response to these requests, the plaintiff received two copies of the report. The first copy that was tendered had redacted from it certain writing in the upper left-hand corner of the document. The second

copy contained writing in the upper left-hand corner indicating its distribution path.

On August 29, 1991, the plaintiff served a Rule 237 notice upon the defendant's counsel commanding the production of copies of all written reports of inspections of the revolving door where the plaintiff fell and the statements of all witnesses. At the time of trial, the plaintiff raised an objection to the defendant's failure to produce the original of Cornelius' report. The defendant contended that it no longer possessed the original, stating that it had been sent to its insurance broker. The plaintiff then issued a subpoena for the broker's file and specifically requested the production of the original of the incident report prepared by Cornelius. When the broker failed to produce the original, the defendant conceded that the broker did not have the original. The copy produced at trial had an original stamp on it dated one day after the plaintiff's accident. When Cornelius was shown the copy of the incident report with writing in the upper left-hand corner, he identified the writing as his own. Cornelius denied routing the report to the maintenance department because he did not detect anything wrong with the door.

The plaintiff argues that the defendant's failure to produce the original incident report limited her scope of examination. She contends that she repeatedly requested the original report. However, the record fails to reflect any specific demand for the original report until the mid-trial subpoena issued to the defendant's insurance broker. The record further reflects that the plaintiff possessed the unredacted copy of the report for two years and four months prior to trial yet the production of the original never became an issue until the trial actually commenced. The plaintiff's Rule 237 notice, although generally describing a group of documents which would include the Cornelius incident report, did not specifically call for the production of the original of this report.

■ Supreme Court Rule 237(b) provides that upon a party's failure to comply with a notice to produce documents at trial, "the court may enter any order that is just, including any order provided for in Rule 219(c) that may be appropriate." (134 Ill. 2d R. 237(b).) To be sure, the giving of an adverse inference instruction is an approved remedy for a party's failure to produce documents (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460); but, as with discovery sanctions, the remedy for noncompliance with a Rule 237 notice is a matter committed to the sound discretion of the trial court (*Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 502 N.E.2d 315). "Rule 237 notices are not discovery tools and should not

be used as a substitute for the discovery rules." *Lannert v. Ramirez* (1991), 214 Ill. App. 3d 1102, 1105, 574 N.E.2d 238, 240.

The plaintiff was aware of the redaction of information from the first copy of the incident report tendered to her for more than two years prior to trial. She received what was represented to be an unredacted copy in May 1989 upon taking the discovery deposition of Jacobs, yet in the two years and four months that elapsed prior to trial, the record fails to disclose any efforts on the plaintiff's part to compel production of the original document. If the document in its original form was so vital to the plaintiff's case, logic would have it that some effort would have been made to compel its production prior to trial. A trial court's refusal to employ any sanction in the face of a violation of a Rule 237 notice is not a *per se* abuse of discretion. Among the factors to be considered in determining whether a sanction is appropriate is the diligence of the party claiming the violation in attempting to secure the document prior to trial. (See *Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 459 N.E.2d 940; *Campen v. Executive House Hotel, Inc.* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511.) The plaintiff's failure in this regard, coupled with Cornelius' testimony that he did not direct the report to the maintenance department and the fact that the copy of the report that was produced at trial bore the defendant's original stamp dated one day after the plaintiff's fall, leads us to conclude that the trial court did not abuse its discretion in failing to sanction the defendant for being unable to produce the original of the document.

For these reasons, we affirm the order of the trial court directing a verdict in favor of the defendant.

Affirmed.

JOHNSON and CAHILL, JJ., concur.